UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT MANNING and JAMARE COATS, <br><br> Defendants. | No. CR 19-00313 WHA <br><br> **FURTHER ORDER RE MOTION FOR DISCLOSURE OF GRAND-JURY INSTRUCTIONS** |

In this prosecution for VICAR murder, a defendant moves for disclosure of grand-jury instructions pursuant to the public right of access and, in the alternative, because he has shown a particularized need for disclosure under Federal Rule of Criminal Procedure 6(e). To the extent stated, the motion is **GRANTED**.

**STATEMENT**

Prior orders have detailed the facts (Dkt. Nos. 128, 296). Relevant here, defendant Robert Manning is alleged to have aided and abetted a VICAR homicide. He moves herein; defendant Jamare Coats joins (Dkt. Nos. 487, 492). A previous order on this issue required the United States to produce grand-jury instructions from June 2019, December 2019, and August 2021 for *in camera* review (Dkt. No. 507). At a hearing, the United States asserted that it did not give any 2019 grand-jury instructions to the 2021 grand jury (though it provided transcripts

of testimony). This order relies on that representation. This order follows full briefing. The motion is suitable for resolution without a hearing. *See* Crim. L.R. 2-1; Civ. L.R. 7-6.

**ANALYSIS**

Having now viewed the grand-jury instructions *in camera*, this order finds that they "go to the substance" of the proceedings. *United States v. Pac. Gas & Elec. Co.*, 2015 WL 3958111, at *13 (N.D. Cal. June 29, 2015) (Judge Thelton E. Henderson). Since they comprised a "matter occurring before the grand jury," this order presumes them secret. FRCrP 6(e)(2)(b). To win disclosure of grand-jury transcripts, a defendant must overcome the presumption.

This order finds Mr. Manning's need for disclosure of the grand-jury instructions from August 2021 outweighs secrecy concerns. "The court may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." FRCrP 6(e)(3)(E)(ii). To succeed, defendants:

> must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. The burden of demonstrating this balance rests upon the private party seeking disclosure. As the secrecy concerns become less relevant, the party seeking disclosure will have a lesser burden in showing justification.

*In re Grand Jury Proceedings*, 62 F.3d 1175, 1179 (9th Cir. 1995) (quoting *Douglas Oil v. Petrol Stops N.W.*, 441 U.S. 211, 222 (1979)) (cleaned up). Our court of appeals has held that speculative assertions of grand-jury irregularity do not outweigh secrecy. *See United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980). The standard is steep, but district courts retain discretion to conduct a fact-intensive inquiry. *See United States v. Murray*, 751 F.2d 1528, 1533 (9th Cir. 1985).

Of course, analyzing whether a "ground may exist to dismiss the indictment" requires familiarity with the standard on a motion to dismiss the indictment. FRCrP 6(e)(3)(E)(ii). "[D]ismissal of the indictment [for prosecutorial error] is appropriate only 'if it is established

that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 17 (1986)). In the case of erroneous instruction, a defendant must demonstrate that the grand jury was "deceived" in some significant way. *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982). Erroneous instructions rarely compel dismissal. *See United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989). To win disclosure, however, a moving party need only show that a ground may exist to dismiss.

As a preliminary matter, our court of appeals has found that if the defense shows the need to disclose, it is "advisable" for the district court to so order before reviewing the transcripts for potential instructional error. *United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994). In other words, the district court should not consider any transcripts when ruling on the disclosure motion. This order follows that guidance. Correspondingly, nothing in this order expresses any opinion whatsoever on the merits of any future motion to dismiss.

The United States primarily relies on *United States v. Stepanyan*, which denied disclosure. 2016 WL 4398281, at *1–2 (N.D. Cal. Aug. 18, 2016) (Judge Jacqueline Scott Corley). It rejected the defendant's argument that evidence of RICO seemed so feeble, no reasonable grand jury could have indicted him and so the United States must have erroneously instructed the grand jury. *Ibid.*; *see also United States v. Galecki*, 2018 WL 3340872, at *12 (D. Nev. July 6, 2018) (Judge Peggy A. Leen) (no grounds to think that instructions erred on *mens rea*); *United States v. Morales*, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007) (Judge Kimberly J. Mueller) (same).

Our case differs. Surpassing "speculation" does not require a defendant to know the unknowable. Mr. Manning has shown a nonspeculative, particularized need based on a change in law and the potential severity of the supposed error.

In 2018, California's Senate Bill 1437 rewrote the homicide statute to provide, "Malice shall not be imputed to a person based solely on his or her participation in a crime." *See* Cal. Pen. Code § 188(a)(3). The change took effect January 1, 2019. The VICAR murder alleged

3

1  herein occurred in March 2019. The initial grand jury convened in June 2019 and the
2  indictment issued in July 2019 (Dkt. No. 1). A superseding indictment as to Mr. Manning
3  issued in December 2019 (Dkt. No. 30). On December 17, 2020, the California Supreme Court
4  interpreted Section 188(a)(3) to find that one cannot be held liable for murder on account of
5  aiding or abetting another in an act whose natural and probable consequences included murder,
6  because "a factfinder" may no longer "impute malice to a person based solely on his or her
7  participation in a crime." *People v. Gentile*, 10 Cal. 5th 830, 847 (2020). The second-
8  superseding, and operative, indictment issued in August 2021 (Dkt. No. 206). So, the ruling
9  issued between the first and second superseding indictments. The parties now agree that only a
10 "direct" theory for aiding and abetting a murder is available for prosecuting Mr. Manning. *Id.*
11 at 848. The direct theory requires a jury to find that a California defendant possessed the
12 requisite malice of her own. *Ibid.*

13 The parties cite no decisions about disclosure of grand-jury instructions and changes in
14 law. A search has yielded just one, *United States v. Way*, 2015 WL 8780540, at *4 (E.D. Cal.
15 Dec. 15, 2015) (Judge Barbara A. McAuliffe). *Way* held that a Supreme Court ruling "altered
16 the element of knowledge for the crimes charged." *Ibid.* The ruling issued after the indictment
17 but before trial. *Way* found the need for instructions to be disclosed nonspeculative, because
18 the error might have rendered the proof presented to the grand jury "legally insufficient to
19 establish probable cause in light of the Supreme Court's holding." *Id*. at 4.

20 True, our facts differ from *Way* with respect to timing: *Gentile* was decided
21 approximately nine months before our operative grand jury convened. *Way* nonetheless
22 persuades. Notably, *Way* acknowledged that the change in law had been subtle. The Supreme
23 Court's ruling did not imply that the government had given bad instructions. *Way* simply held
24 that the disclosure would air the issue. Likewise, *Gentile*'s impact on our instructions remains
25 unclear. A United States attorney's instructions to the grand jury may come written and also as
26 a colloquy with fact-specific questions. As of August 2021, the body of caselaw interpreting
27 *Gentile* remained in an infant stage. Consequently, the United States attorney might have
28 answered difficult questions from the grand jurors without the benefit of much guidance from

the courts. The more complex the change in law and the more recent the change, the greater the risk of erroneous instructions. This distinguishes our facts from the rank speculation in *Stepanyan*, and like cases.

The United States argues that ample evidence of Mr. Manning's personal malice exists. It contends: "Without any reliance on the natural and probable consequences doctrine, the grand jury could easily have indicted Manning on at least two valid theories: first, that Manning acted with express malice, and second, that Manning acted with implied malice" (Opp. Br. at 7). The United States concludes that instructional error could not therefore command dismissal. It further contends that any error could be remedied by a proper instruction to the petit jury. The conclusions are premature. The *sine qua non* of murder is malice. A mis-instruction to the grand jury on how to evaluate malice could have deceived.

*United States v. Stevens* also persuades. 771 F. Supp. 2d 556, 567 (D. Md. 2011) (Judge Rodger W. Titus). The decision dismissed the indictment after analyzing the United States' answer to a verbal grand-juror question about specific intent to obstruct an investigation. The United States had emphasized that knowledge, not just specific intent, could satisfy probable cause. *Ibid. Stevens* found the instructional error on specific intent particularly harmful because the grand juror had asked about the "elephant in the room." *Ibid*. Plausibly, that could have been the case here, too. Direct evidence of Mr. Manning's malice — whether express or implied — might not have appeared overwhelming to the grand jury. To summarize the United States' account of our facts, the decedent first flashed a gun during an argument. Mr. Manning left the scene with Sean Harrison and allegedly gave Mr. Harrison a gun. They returned to the scene allegedly armed. The United States contends Mr. Manning appeared angry and was shouting. Community workers attempted to stop Mr. Manning from approaching the decedent. Soon after, the decedent began shooting; Mr. Manning's alleged allies shot in response. The United States does not claim long-term advance planning. The decedent was not a gang rival. In light of these facts, Mr. Manning's personal malice could have presented a close issue, possibly an "elephant in the room" for the grand jury. *See also United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (Judge Mary Johnson Lowe)

1  (dismissal for cumulative error, including erroneous instruction on intent and knowledge for
2  constructive possession).
3      The United States also contends that the allegations do not require dismissal because if
4  error occurred, a petit jury instruction would correct it. It cites *United States v. Navarro* to
5  point out that instructional error is not "structural." 608 F.3d 529, 538 (9th Cir. 2010).
6  Therefore, if a petit jury were to convict using correct instructions, it would cure any grand-
7  jury instructional error. This order addresses a motion to disclose. Our present standard
8  requires us to anticipate a potential motion to dismiss. *Navarro* pointed out, "[I]f a motion to
9  dismiss is made before the verdict, the district judge should apply the *Bank of Nova*
10 *Scotia* standard." *Id.* at 539. Therefore, to repeat, if "it is established that the violation
11 substantially influenced the grand jury's decision to indict," or if we find "grave doubt that the
12 decision to indict was free from the substantial influence" of the bad instruction, then under
13 *Bank of Nova Scotia*, dismissal of the indictment might be "appropriate." 487 U.S. at 256
14 (quoting *Mechanik*, 475 U.S. at 78) (cleaned up). As stated, such a substantial influence
15 appears possible, warranting disclosure. To make matters crystal clear, however, this order
16 does not opine on potential outcome(s) of any motion to dismiss, nor does it credit any
17 particular version of the facts.
18     Given the change in law, the facts alleged, and that the supposed error would concern a
19 critical element, Mr. Manning has shown that the putative error could have substantially
20 affected the grand jury's decision to indict. *See id.* at 256. This order must balance his need
21 for disclosure against secrecy concerns.
22     The need for secrecy is determined by:

> (1) the need to prevent the escape of prospective indictees; (2) the need to insure [sic] freedom to the grand jury in its deliberations; (3) the need to prevent subornation of perjury and tampering with witnesses by targets of the investigation; (4) the need to encourage free disclosure by witnesses before the grand jury; and (5) the need to protect those exonerated by the grand jury from disclosure of the fact that they were under investigation.

*In re Grand Jury*, 62 F.3d at n.2 (cleaned up).  Factors one, two, three, and five appear to have "insignificant" applicability here, since indictments already issued.  *Ibid.*  Factor four concerns future witness' willingness to testify at grand juries.  This presents a serious concern.  Given the above, however, it does not outweigh the defense's need for disclosure subject to an attorney's-eyes-only (AEO) order.  This order restricts the disclosure to only the most relevant instructions, from August 2021, with witness names redacted.

## CONCLUSION

To extent stated, the motion for disclosure is **GRANTED**.  The grand-jury instructions will be subject to our AEO order.  All AEO requirements previously stated still apply.  The government shall produce to the defense within **48 HOURS** the instructions from August 2021, with any witness names redacted.  Note, however, that this ruling addresses the motion for disclosure alone.  To be clear, a future order may still deny any motion to dismiss, either on its merits or as untimely under the scheduling order.  Any motion to dismiss is due **JUNE 1 AT NOON**, any response is due **JUNE 8TH AT NOON**, and any reply is due **JUNE 13TH AT NOON**.  If necessary, a hearing will be scheduled.

**IT IS SO ORDERED.**

Dated:  May 14, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE